SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

WACO FINANCIAL, INC., J. Jerome
Prevatte, Defendants.

No. K81–152.

United States District Court,
W. D. Michigan,
Southern Division.

July 16, 1981.

---

Mary H. Weiss, Chicago, Ill., for plaintiff.

Theodore H. Amshoff, Jr., Louisville, Ky., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

These parties are before this Court for the third time with respect to the status of WACO Financial as a securities dealer. In December, 1980, a permanent injunction by consent was issued against WACO and Prevatte. That Order enjoined defendants from further violations of the Securities and Exchange Commission's (hereinafter SEC) rules regarding net capital, bookkeeping, customer protection and the filing of financial reports. During the pendency of that suit, the National Association of Securities Dealers (hereinafter NASD) was in the process of taking disciplinary action against WACO and Prevatte. On March 19, 1981, the NASD Board affirmed the expulsion of WACO and censure of Prevatte. All requests (including an action initiated by WACO in this Court) for a stay of those disciplinary sanctions have been denied. Appropriate appeals are pending. Subsequently, WACO and Prevatte were again expelled from the NASD.

On June 18, 1981, the SEC initiated the third suit involving these parties. It seeks to enjoin WACO from continuing to operate as a broker/dealer of securities. The basis for the suit is the contention that WACO, by virtue of its NASD expulsion, is no longer "qualified" to deal in securities under the Securities Exchange Act (the Act) and the Commission's rules. An evidentiary hearing was held with respect to the SEC's motion for a preliminary injunction on July 1, 1981. At that time it became apparent that the fact of WACO's continued operation is not really in dispute. Rather, the outcome hinges on the resolution of two legal issues. The first is whether WACO is in violation of the Act. The SEC alleges that WACO is operating without being "qualified." The second issue involves a determination of the standards necessary for the issuance of a preliminary injunction in this case. After reviewing supplemental briefs requested of the parties and the applicable law, this Court issued a preliminary injunction on July 9, 1981. The Court indicated that the reasons for its issuance would follow in this opinion.

## WACO'S STATUS AS A QUALIFIED DEALER

In order to engage in securities transactions, a broker/dealer must be qualified and registered under the provisions of the Act and the regulations promulgated thereunder. Thereafter a broker/dealer can either be regulated directly by the SEC (known as a SECO dealer) or join a self-regulating body such as one of the ex-

changes or the NASD. When WACO first became registered as a dealer in February, 1975, it operated as a SECO dealer. In September, 1978, it became a member of the NASD and was no longer regulated directly by the SEC. The legal effect of WACO's expulsion from the NASD bears on whether WACO was operating in violation of the Act thereafter.

Section 15(b)(7) of the Act, 15 U.S.C. § 78 *o* (b)(7) provides that no broker/dealer "shall effect any transaction in or induce the purchase or sale of any security unless [it] meets such standards of operational capability" as are set by the SEC. The section continues by giving the SEC authority to promulgate rules and regulations to establish standards of qualification. With respect to the facts involved in WACO's case, the promulgated regulations are quite clear.

Rule 15b8–2, 17 C.F.R. 240.15b8–2 provides:

a) No registered broker or dealer or associated person of a registered broker or dealer *shall be deemed qualified* pursuant to Section 15(b)(7) of the Act, if, by action of a registered national securities association or exchange, such registered broker or dealer or associated person has been and is expelled or suspended from such association or exchange... (emphasis added)

b) Upon written application with respect to any person deemed unqualified to engage in securities activities pursuant to paragraph (a) of this section, the Commission may, subject to such terms and conditions as it may determine to be necessary or desirable, find that the public interest and protection of investors do not require that such person be deemed unqualified to engage in securities activities. The receipt by the Commission of such application *shall operate as a stay* of the disqualification provisions of paragraph (a) of this section pending the Commission's determination with respect to the merits of the application... (emphasis added)

At the hearing WACO's employees, Prevatte and Allwardt admitted that

WACO has continued to effect transactions in securities even after its expulsion from the NASD. Rather, WACO has argued that its expulsion from the NASD has resulted in a reversion to SECO status, thus obviating any need to file a SECO form which had been completed in 1975. This argument, which has not been pursued in defendant's supplemental brief, misses the point. It makes no difference whether WACO automatically became a SECO dealer or not. The point is that the provisions of Rule 15b8–2 render WACO unqualified to be any kind of dealer. It was the NASD expulsion that triggered the rule. WACO's filing of an application as prescribed by Rule 15b8–2 is the mechanism for initiating an SEC's review of WACO's qualifications. It is not disputed that WACO has not filed any such application since its NASD expulsion. Until such time as the application is filed WACO is flagrantly violating the provisions of the Act in that it is effecting transactions in securities while presumed to be unqualified to do so.

## PROPRIETY OF INJUNCTION

Having concluded that WACO is operating in violation of the Act, the issue of a preliminary injunction as an appropriate remedy arises. The SEC has requested such relief. The issuance of an injunction in this case depends heavily upon a preliminary legal determination as to the elements which must be proven by the Commission.

Section 21(d), 15 U.S.C. § 78u(d) of the Act provides:

Whenever it shall appear to the Commission that any person is engaged in or about to engage in acts or practices constituting a violation of any provision of this chapter, the rules or regulations thereunder ... it may in its discretion bring an action in the proper District Court ... to enjoin such acts or practices, and *upon a proper showing* a permanent or temporary injunction or restraining order shall be granted without bond.... (emphasis added)

The crucial legal issue is the meaning of the emphasized language. Does it require the

SEC to bear the burden of proving the common law elements necessary to permit the issuance of an injunction or does it require some different showing based on the language and theory of the statute?

In *SEC v. Senex Corp.*, 399 F.Supp. 497 (1975), aff'd 534 F.2d 1240 (6th Cir. 1976) the Kentucky District Court issued an injunction after finding that the SEC had proven all the common law elements necessary for the issuance of an injunction—including irreparable public harm. The Sixth Circuit reviewed this case upon an abuse of discretion standard. Since all the common law elements had been proven, the Sixth Circuit was not forced to address the issue of whether a different standard would have sufficed.

The problem in this case, however, is that the Court is of the opinion that proof of irreparable harm in the traditional sense is minimal. The Commission has argued that irreparable harm results whenever the integrity of the investment market is compromised. It views the "public" as being much larger than just the Kalamazoo market area which is serviced by WACO. The fear is that failure to enjoin WACO may result in other broker/dealers concluding that the law can be flagrantly violated. The Commission also fears that the "public" will lose confidence in the SEC's ability to control violators of the Act.

The SEC's argument amounts to little more than a contention that violation of the Act is *per se* irreparable harm. There is little evidence of any irreparable public harm in the more traditional sense. None of WACO's clients has filed a complaint of any real significance.[1] There is no evidence of any fraud or failure to properly settle accounts with clients.

■ Thus, this case squarely presents the issue of whether proof of irreparable harm

is necessary when the SEC seeks an injunction under Section 21(d). In the absence of any binding mandate from the Sixth Circuit, this Court looks to other circuit decisions for their precedential value.

The leading cases of *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2nd Cir. 1972) and *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2nd Cir. 1975) established a different standard of proof when the SEC seeks an injunction for violation of the Act. Reasoning that these injunction suits "are creatures of statute," the Court has ruled that proof of irreparable public harm is not necessary. Rather, the SEC as "statutory guardian" of the public interest in securities matters need only show that there has been a violation of the Act and that future violations are reasonably likely to occur. So far as this Court has been able to determine, this standard has been adopted by all the circuits which have actually entertained the issue.[2] It has also been adopted within this district in a situation where the Michigan Attorney General sought an injunction for Commodities Exchange Act violations.[3] In light of the obvious trend, this Court believes it likely that the Second Circuit standard would be adopted by the Sixth Circuit if the issue was squarely presented. Accordingly, this Court holds that the SEC must show that WACO is in violation of the Securities Exchange Act and that such violation is reasonably likely to continue in order to justify the issuance of a preliminary injunction in this case.

■ Having determined the burden of proof incumbent upon the Commission, it is not difficult to conclude that a preliminary injunction is an appropriate remedy in this case. Past violation of Section 15(b) of the Act was never disputed. WACO admitted that it has transacted business between the time of its NASD expulsion and the is-

---

1. There was testimony that the only complaint the SEC had from one of WACO's clients was that there had been some delay in processing a check.

2. *SEC v. World Radio Mission, Inc.*, 544 F.2d 535 (1st Cir. 1976); *SEC v. First American Bank & Trust Co.*, 481 F.2d 673 (8th Cir. 1973); *SEC v. Tax Service, Inc.*, 357 F.2d 143 (4th Cir. 1966); *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980); *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C.Cir.1980); *SEC v. Mize*, 615 F.2d 1046 (5th Cir. 1980).

3. *Kelley v. Carr*, 442 F.Supp. 346 (W.D.Mich. 1977).

suance of the Temporary Restraining Order in this case on June 19, 1981. The evidence further showed that future violations of the Act are likely to occur if the TRO is dissolved without the issuance of a preliminary injunction. WACO's principal, Prevatte, was notified by the SEC on three separate occasions[4] that WACO was operating after having been disqualified by virtue of Rule 15b8–2. He was told that all WACO had to do to stay the disqualification was to file an application. Since the inception of this problem, Prevatte has held firm to his belief that expulsion from the NASD automatically resulted in a reversion to his former SECO status. The Court has already ruled on the merits of that contention. The best and only real proof WACO could present to stave off a finding of likelihood of future violation would be either the filing of the appropriate application or closing of its doors. It is clear that WACO has consistently refused to file such an application and it continued to do business until the Temporary Restraining Order was issued. Under the circumstances, the Court finds that a future violation of the Act is likely to continue. Therefore, the Court is constrained to enjoin WACO from effecting any transaction in securities until such time as it complies with the provisions of Section 15(b)(7) of the Securities Exchange Act and the rules promulgated thereunder.

WACO raises constitutional issues in defense of this case. Since the second case involving these parties, WACO has contended that the NASD disciplinary procedures violate due process rights. The parties have been ordered to notify the Court within 30 days from the date of issuance of the preliminary injunction (July 9, 1981) as to whether a further evidentiary hearing is needed or if cross motions for summary judgment can appropriately place the remaining issues before the Court.

---

4. Mary Weiss, one of SEC's attorneys sent letters to WACO and its attorneys advising of the violations on March 25, 1981, May 22, 1981 and June 1, 1981.